UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

MARGIE DELOZIER,                    )
                                    )
            Plaintiff,              )
                                    )
v.                                  )        No. 3:19-cv-451-TAV-HBG
                                    )
JACOBS ENGINEERING GROUP, INC. and  )
THE TENNESSEE VALLEY AUTHORITY,     )
                                    )
            Defendants.             )

**REPORT AND RECOMMENDATION**

This case is before the undersigned pursuant to 28 U.S.C. § 636, the Rules of this Court,

and the referral Order of the District Judge [Doc. 47]. Now before the Court are Defendant

Tennessee Valley Authority's Motion to Dismiss [Doc. 17] and Defendant Jacobs Engineering

Group's Motion to Dismiss [Doc. 22]. For the reasons set forth below, the Court will

**RECOMMEND** that Defendants' Motions to Dismiss [Docs. 17 & 22] be **granted in part**.

I.      **BACKGROUND**

        A.      **Factual Allegations**

        On December 22, 2008, an ash waste containment structure owned and operated by

Defendant Tennessee Valley Authority ("TVA") at its Kingston Fossil Plant near Kingston,

Tennessee failed and released more than one billion gallons of sludge and water into the nearby

environment. [Doc. 1 at ¶¶ 4–7, 26]. Plaintiff claims that the release of toxic ash sludge from the

containment structure created a "tidal wave" of water, toxic ash sludge, and fly ash that destroyed

several homes, covered local roads and a railroad spur, contaminated drinking wells and municipal

water intakes, damaged water lines, killed fish and other flora and fauna, and ruptured a major gas

line in a neighborhood adjacent to the plant. [*Id.* at ¶ 27]. Plaintiff further asserts that "[d]ue to

the reckless nature of the improper remediation, new radiation and arsenic leaks occurred in 2017 and the leaks continue to the present day." [*Id.* at ¶ 58]. Defendant Jacobs Engineering Group, Inc. ("Jacobs") was the primary contractor in charge of cleanup, hired by TVA to be responsible for "safety oversight for TVA and the EPA." [*Id.* at ¶ 67].

Plaintiff Margie Delozier filed this Complaint against Defendants on behalf of "owners of private property and/or residents of private property in Roane County, Tennessee," asserting "claims for personal injury, property damage, trespass, nuisance, and medical monitoring." [*Id.* at ¶ 2]. Plaintiff states that she "bring[s] this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3)" on behalf of three proposed Subclasses:

**Bodily Injury Subclass**
All current and former residents of Roane County who have been exposed to the toxic coal ash sludge released from the Kingston Fossil Plant, by Defendants, to establish medical monitoring as reasonably anticipated consequential damages resulting from their exposure to the aforementioned toxins.

**Property Owners Subclass**
Current property owners in Roane Township who have owned and/or resided in their current private residence for at least two years.

**Non-property owner Residents Subclass**
Roane Township Residents who have lived in or on private property within the township for at least two years.

[*Id.* at ¶ 191].

Plaintiff asserts nine causes of action against Defendants: (1) promissory estoppel; (2) fraudulent concealment; (3) intentional or reckless failure to warn; (4) negligence; (5) negligence per se; (6) imposition of liability on TVA from Jacobs' verdict by application of doctrine of offensive non-mutual collateral estoppel and for TVA's nondelegable duty; (7) negligent failure to perform baseline medical and perimeter air monitoring; (8) private nuisance; and (9) trespass. [*Id.* at p. 38–73].

2

Defendant TVA moves under Fed. R. Civ. P. 12(b)(1), 12(b)(4), 12(b)(5), and 12(b)(6) to dismiss all claims on various grounds. [Doc. 17]. Defendant TVA asserts that the Complaint should be dismissed under Rule 12(b)(1) because Plaintiff cannot establish standing based on the alleged injuries of putative class members; the Complaint should be dismissed under Rule 12(b)(6) because Plaintiff does not plausibly plead the personal injury required for standing; Plaintiff's claims are time-barred; and that Plaintiff's claims do not state a claim as a matter of law. [Doc. 18]. Defendant TVA further claims that the Complaint should be dismissed as to TVA because Plaintiff did not properly or timely perfect service of process. [*Id.*]. Defendant Jacobs also moves under Fed. R. Civ. P. 12(b)(1) and 12(b)(6) to dismiss Plaintiffs' Complaint, asserting similar standing arguments, that Plaintiff's claims are time-barred, and that Plaintiff's claims fail as a matter of law. [Doc. 22].

### B.    Events After the Spill and Related Cases

In their motions to dismiss, Defendants also detail the factual background and several relevant cases related to the ash spill at the Kingston site, of which the Court and the parties are already aware. First, the parties do not dispute that the spill occurred on December 22, 2008 at the Kingston Fossil Plant. *See* [Doc. 1 at ¶ 4]. "As a result of the dike failure, approximately 5.4 million cubic yards of coal ash sludge spilled from the 84–acre containment pond to an adjacent area of about 300 acres, consisting of primarily the Watts Bar Reservoir, the Clinch and Emory Rivers, and government and privately owned shoreline properties." *Long v. TVA*, No. 3:09-CV-114, 2009 WL 3784963, at *1 (E.D. Tenn. Nov. 9, 2009); *see* [Doc. 1 at ¶ 7]. "Immediately following the failure, TVA undertook various spill response efforts, conducted in conjunction with the EPA and the Tetra Tech EM Inc., Superfund Technical Assessment and Response Team." *Long*, 2009 WL 3784963 at *1; *see also Adkisson v. Jacobs Eng'g Grp., Inc.*, 790 F.3d 641, 643–

3

44 (6th Cir. 2015) ("TVA and the Environmental Protection Agency (EPA) responded to the coal-ash spill as required by the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA) and the EPA's National Oil and Hazardous Substances Pollution Contingency Plan.").

On January 11, 2009, the EPA terminated the initial emergency-response phase and transferred lead agency authority to TVA "for all further coal-ash cleanup, removal, and remediation." *Id.* at 644. "In February 2009, Jacobs entered into a contract with TVA to serve as the prime contractor providing project planning, management, and oversight to assist in the overall recovery and remediation associated with the coal-ash spill." *Id.*; *see also* [Doc. 1 at ¶¶ 67, 327]. "Jacobs, pursuant to its contract, subsequently prepared and provided to TVA a comprehensive Site Wide Safety and Health Plan (SWSHP)." *Adkisson*, 790 F.3d at 644; *see* [Doc. 1 at ¶ 69]. Defendant TVA's CERCLA response activities were completed by January 2015 pursuant to the Kingston Ash Recovery Project: On-Scene Coordinator Report for the Non-Time Critical Removal Action for the Embayment/Dredge Cell. *See* [Doc. 25-1]. Defendant TVA notes that this Closure/Post-Closure Plan approved by the EPA and the Tennessee Department of Environment and Conservation also "included a long-term groundwater monitoring plan." [Doc. 18 at 13]. The EPA conducted a final inspection on April 9, 2015 and submitted a final Completion Report for the Kingston Ash Recovery Project on September 15, 2015. *See* [Doc. 25-10].

Defendant TVA details that "[s]oon after the Kingston ash spill, residents of Roane County filed more than 60 lawsuits against TVA alleging personal injury and property damage claims arising from the spill." [Doc. 18 at 14]; *see, e.g.*, *In re TVA Ash Spill Litig.*, 805 F. Supp. 2d 468, 472 (E.D. Tenn. 2011); *Chesney v. TVA*, No. 3:09-cv-009-TAV-HBG (E.D. Tenn. Jan. 1, 2009) [Doc. 1]. Following the consolidation of these cases, bifurcation, and a liability trial, "the cases

4

were mediated and settled in 2014, with TVA paying $27.8 million in exchange for general releases for all claims, known and unknown, from more than 800 individual plaintiffs." [Doc. 18 at 14]; *see, e.g.*, *Chesney v. TVA*, No. 3:09-cv-009 (E.D. Tenn. August 4, 2014) [Doc. 540].

Subsequently, on August 22, 2013, the first round of lawsuits was filed against Defendant Jacobs by several employees of Jacobs and their spouses who worked on the remediation of the coal-ash spill at the KIF plant. *See Adkisson v. Jacobs Eng'g Grp., Inc.*, No. 3:13-cv-505-TAV-HBG (E.D. Tenn. Aug. 22, 2013) [Doc. 1]. "The workers suffer from a variety of medical conditions, which they claim were caused by Jacobs's negligence with respect to air monitoring, dust control, the use of personal protective equipment, and worker training, all in violation of Jacobs's contract with TVA and the SWSHP." *Adkisson*, 370 F. Supp. 3d at 832. Without reviewing the extensive procedural background, the Court consolidated the cases and bifurcated the trial into two phases. The cases proceeded to trial on Phase I, related to: (1) whether Jacobs owed plaintiffs a legal duty; (2) whether Jacobs breached that duty; and (3) whether Jacobs breach was capable of causing plaintiffs' alleged injuries. *Adkisson*, No. 3:13-cv-505-TAV-HBG (E.D. Tenn. January 30, 2017) [Doc. 136]. "[T]he Court submitted to the jury a verdict form that asked: (1) whether Jacobs violated its contract with TVA; (2) whether Jacobs failed to exercise reasonable care in carrying out the duties owed to plaintiffs; and (3) whether that breach was capable of causing each of ten medical conditions. The jury answered 'yes' to all and returned a verdict for plaintiffs [on November 7, 2018]." *Adkisson*, 370 F. Supp. 3d at 835.

Lastly, Defendants note that Plaintiff's counsel also filed the *Roane County* action, which was subsequently removed to this Court, wherein Plaintiffs Roane County, the City of Harriman, and the City of Kingston filed suit against Defendants TVA and Jacobs seeking damages and injunctive relief for injuries sustained by their citizens. *See Roane County, Tenn. et al. v. TVA et*

*al.*, No. 3:19-cv-206-TAV-HBG (E.D. Tenn. May 7, 2019) [Doc. 1]. The Court denied plaintiffs leave to file an amended complaint seeking to assert a class action under Rule 23, finding that "this procedure—*parens patriae* standing, as it is called—is available only to sovereign states, not cities and counties." *Roane Cty., Tenn. et al. v. Jacobs Eng'g Grp., Inc. et al.*, 429 F. Supp. 3d 494, 495 (E.D. Tenn. 2019) (finding "Plaintiffs lack Article III standing to pursue claims based on injuries to their citizens"). The Court directed plaintiffs to amend their complaint to conform with the Court's findings and TVA and Jacobs moved to dismiss this amended complaint. On September 30, 2020, the Court granted TVA and Jacobs' motions to dismiss and dismissed the plaintiffs' claims without prejudice *See Roane County*, 2020 WL 5836553 at *3.

In its Memorandum in Support of its Motion for Summary Judgment [Doc. 18], Defendant TVA details the factual background of the 2008 Kingston ash spill and the "numerous rounds of litigation over the past decade," as well as argues that Plaintiff's claims are time-barred. [*Id.* at 12]. Defendant Jacobs seeks [Doc. 24] for the Court to take judicial notice of several documents submitted in connection with the Declaration of Attorney Jeremy Smith [Doc. 25]. In particular, Defendant Jacobs requests for the Court to take judicial notice of:

1. Tennessee Valley Authority, *Kingston Ash Recovery Project: On-Scene Coordinator Report for the Non-Time Critical Removal Action for the Embayment/Dredge Cell*, Doc. No EPA-AO-063 (Aug. 2015);

2. *Knoxville News Sentinel*, list of articles regarding Kingston coal-ash spill (12/22/2008–11/7/2018);

3. Josh Flory, *Toxic Details Released*, Knoxville News Sentinel (Dec. 31, 2008);

4. J. J. Stambaugh, *Tests Show High Levels of Arsenic*, Knoxville News Sentinel (Jan. 2, 2009);

5. Jamie Satterfield, *Special Report: TVA's Kingston Fossil Plant—Facing a Toxic Battle*, Knoxville News Sentinel (July 23, 2017);

6. *Chesney v. Tenn. Valley Auth.*, No. 3:09-cv-00009, Doc. 1;

6

7. *Chesney v. Tenn. Valley Auth.*, No. 3:09-cv-00009, Doc. 540;

8. *Adkisson v. Jacobs Eng'g Grp. Inc.*, No. 3:13-cv-00505, Doc. 1;

9. *Adkisson v. Jacobs Eng'g Grp. Inc.*, No. 3:13-cv-00505, Doc. 378;

10. Tennessee Valley Authority, *Kingston Ash Recovery Project: Completion Report*, Doc. No. EPA-AO-064 (Aug. 2015);

11. *Adkisson v. Jacobs Eng'g Grp. Inc.*, No. 3:13-cv-00505, Doc. 412;

12. Matt Lakin, *First Lawsuit Filed in TVA Ash Spill*, Knoxville News Sentinel (Dec. 31, 2008);

13. Jamie Satterfield, *Migraines, Coughs, Infections, Boils Plagued Workers Cleaning Up Ash Spill*, Knoxville News Sentinel (July 21, 2017);

14. Jamie Satterfield, *Special Report: Coal Ash Danger—TVA Now Posting Signs*, Knoxville News Sentinel (Sept. 14, 2017); and

15. Site-Wide Safety and Health Plan for the TVA Kingston Fossil Plant Ash Release Response.

[Doc. 24]; *see* [Doc. 25-1–25-15].

Rule 12(d) provides that "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). However, the Sixth Circuit has taken a "liberal view" of matters falling within the pleadings for purposes of Rule 12(d). *Armengau v. Cline*, 7 F. App'x 336, 334 (6th Cir. 2001). The Court may consider "the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (citing *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001)). Additionally, the Court may consider "matters of which a court may take judicial notice, and letter

decisions of governmental agencies." *Armengau*, 7 F. App'x at 334. Further, extrinsic materials that "'fill in the contours and details' of a complaint," too, may be considered without converting the motion to one for summary judgment. *Id.* (quoting *Yeary v. Goodwill Indus.-Knoxville, Inc.*, 107 F.3d 443, 445 (6th Cir. 1997)).

"The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Civ. P. 201. The Court notes that in the *Roane County* litigation, District Judge Varlan recently found it appropriate for the Court to consider a "Kingston Fly Ash Recovery Project Non-Time-Critical Removal Action Embayment/River System Action Memorandum," several "new articles, press releases, and similar sources, records of various governmental bodies, various court filings, and a document referred to in plaintiffs' complaint"—without converting the motions to dismiss into motions for summary judgment. *Roane Cty., Tenn. v. Jacobs Eng'g Grp., Inc.*, No. 3:19-CV-206-TAV-HBG, 2020 WL 2025613, at *3 (E.D. Tenn. Apr. 27, 2020). Similar to District Judge Varlan's recent finding in *Roane County*, the Court finds it appropriate to consider the documents submitted in support of Defendant Jacobs' motion to dismiss without converting the motion into a motion for summary judgment.

First, Defendant Jacobs seeks for the Court to take judicial notice of the TVA On-Scene Coordinator Report for the Kingston Recovery Project [Doc. 25-1], the Completion Report for the Kingston Ash Recovery Project [Doc. 25-10], and the SWSHP [Doc. 25-11]. The SWSHP is explicitly referenced in Plaintiff's complaint and central to Plaintiff's claims. *See* [Doc. 1 at ¶¶ 65–66, 92–93]; *see also Roane County*, 2020 WL 2025613 at *3 (noting the attachment of the SWSHP did "not convert the motion to one for summary judgment because it is 'referred to in the

Complaint and [is] central to the claims contained therein") (internal citation omitted). The Court also finds that the consideration of Defendant TVA's On-Scene Coordinator Report and Kingston Ash Recovery Project Completion Report does not convert the motion into a motion for summary judgment, as "the Court may take judicial notice of public records and government documents available from reliable sources on the Internet." *Mitchell v. TVA*, No. 3:14-CV-360-TAV-HBG, 2015 WL 1962203, at *4 n.2 (E.D. Tenn. Apr. 30, 2015).

Next, Defendant Jacobs seeks for the Court to take judicial notice of various documents in the *Chesney* and *Adkisson* litigation discussed above. Courts may "take judicial notice of developments in related proceedings in other courts of record." *Chase Bank USA, N.A. v. City of Cleveland*, 695 F.3d 548, 553 n.2 (6th Cir. 2012) (quoting *Walburn v. Lockheed Martin Corp.*, 431 F.3d 966, 972 n.5 (6th Cir. 2005)). Therefore, the consideration of transcripts and various court filings from the other cases arising out of the ash spill does not convert Defendants' motions pursuant to Rule 12(d) because these documents are matters of which the Court may take judicial notice. *See Winget v. JP Morgan Chase Bank, N.A.*, 537 F.3d 565, 576 (6th Cir. 2008) ("[O]n a motion to dismiss, we may take judicial notice of another court's opinion not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity."); *see, e.g.*, *Roane Cty.*, 2020 WL 2025613, at *3 ("Next, the attachment of various court filings and court orders from other cases arising out of the ash spill do not require that the Court convert defendant Jacobs' motion pursuant to Rule 12(d) because these documents are public records subject to judicial notice.").

Lastly, Defendant Jacobs seeks for the Court to take judicial notice of a compilation of articles published in the *Knoxville News Sentinel* regarding the Kingston coal-ash spill from December 22, 2008 through November 7, 2018, as well as six individual articles. "[T]he Court

9

finds that the fact of the existence of various new articles . . . as an indication of what information was in the public realm are subject to judicial notice." *Id.* at *4. As noted in the *Roane County* decision, these articles are not judicially noticed for the "truth of their contents," but rather "for the limited purpose of establishing what information was within the public realm." *Id.*

Accordingly, "given this Circuit's 'liberal view' of matters which the Court may consider in ruling on a Rule 12 motion," the Court finds that the documents attached to Defendant Jacobs' motion does not convert it into a motion for summary judgment. *Id.* (quoting *Armengau v. Cline*, 7 F. App'x 336, 334 (6th Cir. 2001)).[1]

## II. STANDARD OF REVIEW

When a party seek to dismiss an action under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), a district court is "bound to consider the 12(b)(1) motion first, since the Rule 12(b)(6) challenge becomes moot if this court lacks subject matter jurisdiction." *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990). A motion to dismiss for lack of standing is properly characterized as a motion to dismiss for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). *Forest City Residential Mgmt., Inc. ex rel. Plymouth Square Ltd. Dividend Hous. Ass'n v. Beasley*, 71 F. Supp. 3d 715, 722–23 (E.D. Mich. 2014) (citing *Stalley v. Methodist Healthcare*, 517 F.3d 911, 916 (6th Cir. 2008)). "[W]here subject matter jurisdiction is challenged under Rule 12(b)(1), as it was here, the *plaintiff* has the burden of proving jurisdiction in order to survive the motion." *Wayside Church v. Van Buren Cty.*, 847 F.3d 812, 817 (6th Cir. 2017) (internal citation omitted).

"A Rule 12(b)(1) motion for lack of subject matter jurisdiction can challenge the sufficiency of the pleading itself (facial attack) or the factual existence of subject matter

---

[1] Plaintiff does not challenge Defendant Jacob's request for the Court to take judicial notice of this material.

jurisdiction (factual attack)." *Cartwright v. Garner*, 751 F.3d 752, 759 (6th Cir. 2014) (citing *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994)). "This distinction is important because if the defendant makes a facial attack, the Court must take all of the allegations in the complaint as true to determine 'whether the plaintiff has *alleged* a basis for subject matter jurisdiction.'" *Fishon v. Mars Petcare US, Inc.*, --- F. Supp. 3d ---, 2020 WL 6826733, at *2 (M.D. Tenn. Nov. 20, 2020) (quoting *Cartwright*, 751 F.3d at 759).

Defendants have also moved for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6). To survive a motion to dismiss for the failure to state a claim under Rule 12(b)(6), a plaintiff must satisfy the basic federal pleading requirements set out in Rule 8(a). Rule 8(a) of the Federal Rules of Civil Procedure sets out a liberal notice pleading standard. *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 514 (2002). Thus, a complaint filed in federal court need only contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the [opposing party] fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Detailed factual allegations are not required, but a party's "obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Id.* (internal quotation marks and alterations omitted). "Conclusory allegations or legal conclusions masquerading as factual allegations will not suffice," and "a complaint containing a statement of facts that merely creates a *suspicion* of a legally cognizable right of action is insufficient." *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 519 (6th Cir. 2008) (emphasis added).

In deciding a Rule 12(b)(6) motion, a court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Determining whether a complaint states a plausible claim for relief will [ultimately] . . . be a context-specific task that requires [the Court] to draw on its judicial experience and common sense." *Id*. at 679. In conducting this inquiry, the Court "must construe the complaint in a light most favorable to plaintiffs, accept all well-pled factual allegations as true, and determine whether plaintiffs undoubtedly can prove no set of facts in support of those allegations that would entitle them to relief." *Bishop*, 520 F.3d at 519.

Additionally, under Federal Rule of Civil Procedure 9(b), a complaint "alleging fraud or mistake . . . must state with particularity the circumstances constituting fraud or mistake." The Sixth Circuit has interpreted Rule 9(b) as requiring the plaintiff to "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Ind. State Dist. Council of Laborers & Hod Carriers Pension & Welfare Fund v. Omnicare, Inc. (Omnicare I)*, 583 F.3d 935, 942–43 (6th Cir. 2009) (citations and internal quotation marks omitted). "A court need not accept claims that consist of no more than mere assertions and unsupported or unsupportable conclusions." *Sanderson v. HCA–The Healthcare Co.,* 447 F.3d 873, 876 (6th Cir. 2006) (citing *Kottmyer v. Maas,* 436 F.3d 684, 688 (6th Cir. 2006)).

## III. ANALYSIS

### A. Standing

Defendants assert that the Complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1) because Plaintiff Delozier fails to allege the personal injury required for standing under Article III. *See* [Doc. 18 at 20–22; Doc. 23 at 13–16]. Defendant TVA claims that

"with the exception of two vague and conclusory allegations of property contamination and exposure to coal ash, the Complaint contains no allegations that Plaintiff *herself* sustained any legally cognizable injury." [Doc. 18 at 21]. Similarly, Defendant Jacobs asserts that Plaintiff Delozier "has not alleged facts sufficient to show that she has personally suffered *any* injury as a result of Jacobs' conduct." [Doc. 23 at 15]. Both Defendants point to the overwhelming similarity to the complaint filed in the *Roane County* litigation and maintain that mere exposure to coal ash is insufficient to establish an injury in fact.

Plaintiff responds that she "adequately alleged an injury in fact as she owns and resides in the private property located in Roane County, Tennessee, where Defendants caused the dispersion of coal ash and fugitive dust," as well as that she is "able to show that she personally was injured by Defendants' recklessness regarding the spill and alleged remediation and thus is an adequate representative of the class." [Doc. 28 at 7–8]. Plaintiff maintains that she has adequately established an injury in fact, which is fairly traceable to Defendants, and can be redressed through the requested relief. [*Id.* at 11–13]. Therefore, Plaintiff asserts that the Complaint pleads all necessary elements to demonstrate standing, with specific citations to applicable paragraphs for each requirement. *See* [Doc. 29 at 7–9].

Defendant TVA replies that Plaintiff cannot establish Article III standing, as "the Complaint contains almost no allegations pertaining specifically, individually, and personally to the named Plaintiff, Ms. Delozier." [Doc. 38 at 9]. Defendant TVA maintains that the factual allegations in the Complaint do "not disclose any facts demonstrating either Ms. Delozier's alleged exposure to coal ash, her alleged injuries, or her knowledge of the supposed hazards from the Kingston ash spill." [*Id.*]. Therefore, Defendant TVA claims that Plaintiff's allegation of standing "is through a flawed syllogism," as Plaintiff merely "asserts that she owns property and lives in

13

Roane County; that the Kingston ash spill occurred in Roane County; and therefore she was personally injured." [*Id.* at 10 (internal quotations omitted)].[2]

Defendant Jacobs similarly replies that Plaintiff cannot establish that she personally suffered actual injury, as the Complaint relies "on allegations concerning injuries to unnamed third parties." [Doc. 39 at 7]. However, Defendant Jacobs also claims Plaintiff's Response fails to allege specific facts establishing how she has sustained any injury caused by Jacobs, as well as "these alleged injuries are insufficient because they bear no connection to Jacobs." [*Id.*]. Defendant Jacobs notes Plaintiff's citations to allegations in the Complaint that her property was damaged by toxic ash sludge and that her health was damaged as a result of the ash spill, *see* [Doc. 1 at ¶¶ 47, 49], but claims that "Jacobs played no role in the December 2008 spill, and did not perform services at Kingston until *after* the spill occurred." [Doc. 39 at 7]. Moreover, Defendant Jacobs claims that "[a]s Plaintiff did not work at the site, there is no way that any act or omission of Jacobs could have contributed to her alleged injuries." [*Id.*]. Lastly, Defendant Jacobs notes Plaintiff's allegations of leaks of fly ash constituents from 2017-2019, *see* [Doc. 1 at ¶ 51], but claims "Jacobs completed its work at Kingston *by* 2015 and therefore could have no involvement in any alleged 'leaks' that occurred starting two years later." [Doc. 39 at 7].

Article III of the Constitution provides that the "judicial power" extends only to "Cases" and "Controversies," U.S. Const. Art. III, § 2, an element of which is standing. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). "Although the term 'standing' does not appear in Article III, [the] standing doctrine is 'rooted in the traditional understanding of a case or controversy' and limits 'the category of litigants empowered to maintain a lawsuit in federal court[.]'" *Buchholz v.*

---

[2] Defendant TVA also claims that "Plaintiff does not dispute that her alleged residence is located in Harriman, several miles away from the Kingston plant and the ash spill location." [Doc. 38 at 10 n.3].

*Meyer Njus Tanick, PA*, 946 F.3d 855, 861 (6th Cir. 2020) (quoting *Spokeo*, 136 S. Ct. at 1547). If a named plaintiff does not have standing, the Court lacks subject-matter jurisdiction to hear the case. *See O'Shea v. Littleton*, 414 U.S. 488, 495 (1974) ("[I]f none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class."). To establish Article III standing at the pleading stage, a plaintiff must allege facts demonstrating that she "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, 136 S. Ct. at 1547 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). The plaintiff has the burden of demonstrating all three elements "separately for each form of relief sought." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000).

Here, Defendants assert that the Complaint should be dismissed for a lack of standing because it does not plausibly allege that Plaintiff suffered an injury in fact. "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 136 S. Ct. at 1548 (quoting *Lujan*, 504 U.S. at 560). For an injury to be "concrete," it must be real, and not abstract, and for an injury to be particularized, it "must affect the plaintiff in a personal and individual way." *Id.* (internal citations omitted).

At this stage, in determining Plaintiff's standing, the Court "must accept as true all [factual] material allegations of the complaint." *Fednav, Ltd. v. Chester*, 547 F.3d 607, 614 (6th Cir. 2008) (internal quotation omitted). Moreover, the Court "must construe the complaint liberally in favor of the complaining party." *White v. United States*, 601 F.3d 545, 551 (6th Cir. 2010). As Defendant TVA notes, the Sixth Circuit recently acknowledged a circuit split over the application

of the *Iqbal/Twombly* standard when addressing standing under Rule 12(b)(1). *See Shelby Advoc. for Valid Elections v. Hargett*, 947 F.3d 977, 982 (6th Cir.) ("In reaching this conclusion, we need not resolve how the pleading standards implicated by motions to dismiss under Civil Rule 12(b)(6) relate to the pleading standards implicated by motions to dismiss for lack of standing in Civil Rule 12(b)(1) motions like this one."), *cert. denied*, 141 S. Ct. 257 (2020).

In *White*, when reviewing the district court's dismissal of the plaintiffs' claims on the pleadings under Rule 12(b)(1), the Sixth Circuit stated that "[g]eneral factual allegations of injury may suffice to demonstrate standing, 'for on a motion to dismiss we presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" 601 F.3d at 551 (quoting *Lujan,* 504 U.S. at 561)). "However, 'standing cannot be inferred . . . from averments in the pleadings, but rather must affirmatively appear in the record,' *Spencer v. Kemna,* 523 U.S. 1, 10–11 (1998), nor will 'naked assertion[s] devoid of further factual enhancement' suffice, *Ashcroft v. Iqbal,* 556 U.S. 662 (2009) (internal quotation marks omitted)." *White*, 601 F.3d at 551–52. "Rather, the complaint must contain 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Iqbal*, 556 U.S. at 678); *see, e.g.*, *Glenn v. Holder*, 690 F.3d 417, 420 (6th Cir. 2012).

Ultimately, the Court finds that Plaintiff has standing because she has adequately pled an injury in fact that is fairly traceable to the conduct of Defendants. Accepting the factual allegations in the Complaint, Plaintiff has alleged that her property, along with the property of the members of the proposed putative class, was damaged by toxic ash sludge from the spill, which either remains on the property or is damaged by its proximity to the spill. [Doc. 1 at ¶47]. Moreover, Plaintiff has alleged that her real property was damaged by its proximity to the spill [*Id.* at ¶ 48], as well as that her health and well-being has been severely damaged and threatened by the ash spill

[*Id.* at ¶ 49].  In addition, Plaintiff alleges that "the asset recovery occurred and continues to occur to the present day, due in part to hidden, ongoing, and new current leaks of fly ash constituents on or about 2017–2019.  [*Id.* at ¶ 51].  Plaintiff also claims that "she and her family have ingested, inhaled, and had direct dermal contact with coal ash through the air and/or in the surface and subsurface soil and water."  [*Id.* at ¶ 19].  Lastly, Plaintiff has cited economic damages [*Id.* at ¶ 61], the risk of continued exposure [*Id.* at ¶ 144], and incurred healthcare costs [*Id.* at ¶ 145].

The Court notes the "general rule that mere exposure to a vague risk of possible harm, without more, is insufficient for Article III standing."  *Saleh v. Barr*, 801 F. App'x 384, 392 (6th Cir. 2020); *see, e.g.*, *Buchholz v. Meyer Njus Tanick, PA*, 946 F.3d 855, 865 (6th Cir. 2020) ("[T]he Supreme Court has explained that the fear of a future harm is not an injury in fact unless the future harm is 'certainly impending.'") (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013)).  However, based on the allegations in the Complaint, Plaintiff has alleged sufficient facts, which if true, allow the Court to find that Plaintiff has Article III standing to pursue her claims. Additionally, Plaintiff has alleged that her injuries are fairly traceable to Defendants, as she cites to both the alleged reckless nature of the remediation efforts [Doc. 1 at ¶¶ 51, 58], as well as that "Defendants negligently, recklessly, and/or intentionally produced, stored, and transported coal ash so as to contaminate Plaintiff's and the class members' property" [*Id.* at ¶ 366].

The Court also notes, however, the potential need for Plaintiff to later establish "a genuine issue of fact that [her] exposure to the coal or fly ash in the environment equates to an exposure to the potentially toxic constituents bound up in the ash."  *In re TVA Ash Spill Litig.*, 805 F. Supp. 2d 468, 482 (E.D. Tenn. 2011) (addressing a motion for summary judgment).  Lastly, the Court must acknowledge the numerous references to Plaintiffs as a whole in the Complaint—instead of alleging the individual Plaintiff's factual allegations—as well as failing to allege which Defendant

17

was responsible for the alleged factual allegations. Defendants properly identify these issues in the Complaint which damage Plaintiff's claim of standing. However, due to the reasons set forth above, the Court finds that sloppy drafting and the overwhelming similarity to the complaint in the *Roane County* litigation alone do not constitute a reason to find that Plaintiff does not have standing at this time.

### B.     Statute of Limitations

Both Defendants claim that Plaintiff's Complaint should be dismissed because her claims are time-barred by the applicable statute of limitations. Defendants note that the Complaint was filed over ten years after the 2008 Kingston ash spill. Moreover, Defendants broadly claim that the discovery rule is not applicable in the present case, as the ash spill and concerns regarding the alleged environmental and health effects have been extensively discussed in the media, multiple widely publicized lawsuits, and government releases since 2008. Therefore, Defendants assert that Plaintiff cannot demonstrate the essential elements of fraudulent concealment necessary to toll the statute of limitations.

Defendant TVA argues that Plaintiff's property damage claims are time-barred because they were filed more than ten years after the 2008 ash spill and more than four years after the EPA "issued a final closure notice on September 15, 2015." [Doc. 18 at 25]. Defendant TVA details that Plaintiff's property damage claims are "premised on alleged damage to or physical invasion of coal ash particles onto her property from the spill and/or activities associated with the CERCLA recovery project." [*Id.*]. Additionally, Defendant TVA asserts that Plaintiff's permanent nuisance claim arising from TVA's operation of the Kingston Fossil Plant is time-barred because the statute of limitations commences at the time of the creation of the nuisance.

Defendant Jacobs responds in greater detail to Plaintiff's allegation that Defendants' "fraudulent statements were not discovered" until the *Adkisson* Phase I jury verdict on November 7, 2018. *See* [Doc. 1 at ¶ 129]. Here, Defendant Jacobs argues that its alleged misconduct "stems from its assistance with TVA's cleanup of the spill site, which was completed no later than April 2015." [Doc. 23 at 17]. Defendant Jacobs provides several citations in the Complaint which suggest that Plaintiff was aware of the alleged wrongdoing of TVA and Jacobs. Therefore, Defendant Jacobs alleges that "the rule does not require actual discovery, and Plaintiff plainly had sufficient information at her disposal to discover her (unpleaded) injuries." [*Id.* at 18].

Defendant Jacobs alleges that Plaintiff cannot rely on her fraudulent concealment claim to toll the applicable statute of limitations. Defendant Jacobs asserts that even if it had concealed the alleged information, "Plaintiff's claims would still be years too late," as fraudulent concealment claims also require that the plaintiff could not have discovered the injury despite reasonable care and diligence. [*Id.* at 19]. In support, Defendant Jacobs cites to similar allegations made in numerous lawsuits, widespread media coverage of both the related lawsuits and dangers of coal ash, and alleged contradictions within Plaintiff's Complaint. Lastly, Defendant Jacobs claims that Plaintiff's alleged reliance on false statements made by Defendants, which induced her to refrain from taking legal action, "is not a valid excuse under the law here [Plaintiff] *could have* discovered the alleged injury with reasonable diligence." [*Id.* at 22].

Plaintiff responds that her personal injury and property claims are not time-barred, as Plaintiff "did not know and could not have known the truth about the dangers of fly ask prior to November 7, 2018 when a jury in *Adkisson* . . . determined that fly ash was capable of causing hypertension, coronary artery disease, lung cancer, [and various other illnesses]." [Doc. 28 at 15]; *see* [Doc. 1 at ¶ 88]. Plaintiff states that a cause of action in tort doesn't exist until a judicial

19

remedy becomes available and cites to its allegations of hidden, ongoing, and new leaks of fly ash constituents on or about 2017–2019. Additionally, in response to Defendant TVA's arguments regarding her nuisance claim, Plaintiff asserts that "Defendants' CERCLA and Kingston Fossil Plant allegations are not correct" because the Complaint alleges a temporary nuisance through the ongoing leaks and violations, and thus this continuation is a new offense entitling Plaintiff to recover damages. [Doc. 28 at 18]; *see* [Doc. 1 at ¶¶ 147–48].

Next, Plaintiff claims that dismissal of the Complaint due to the statute of limitations is an extraordinary measure and not applicable in the present case. Plaintiff responds that under the discovery rule, she has properly alleged that: "1) Defendants concealed material facts; 2) Plaintiff could not have discovered the injuries due to the Defendant's claim that fly ash was safe, [and that] the problem of the spill [had] been completely remediated; and 3) Defendants knew or should have known." [Doc. 29 at 14]. With respect to constructive notice, Plaintiff asserts that she was "not aware of the wrongdoing because Defendant Jacobs' managerial agents manipulated the Jacobs public relations representatives at the local site to disseminate false information regarding fly ash safety that still continues to this day." [*Id.* at 19].

Lastly, Plaintiff asserts that Defendants' fraudulent concealment tolls the running of the statute of limitations and that she has sufficiently pled fraudulent concealment by Defendants. In particular, Plaintiff claims "[d]espite cleaning up the spill, and continuing to this day, Jacobs and TVA, continue to make representations that fly ash is safe," which is contrary to the jury verdict in *Adkisson*. [*Id.* at 15]. Plaintiff provides several citations to the Complaint which she claims allege required affirmative acts of concealment. [*Id.* at 16]. Therefore, Plaintiff maintains that the allegations in the Complaint establish that she acted diligently and could not have discovered

Defendants' unlawful conduct, as well as that fraudulent concealment creates a question of fact for a jury regarding the tolling of the statute of limitations.

Defendant TVA replies that the allegations in the Complaint, as well as "judicially noticeable and undisputed materials," demonstrate that Plaintiff, in the exercise of reasonable care and diligence, should have discovered her personal injury and property claims. [Doc. 38 at 14]. Defendant TVA responds that Plaintiff's "attempts to recast" her permanent nuisance claims as a temporary nuisance claim are improper, as well as that the allegations of the Complaint plead a permanent nuisance claim. [*Id.*].

Defendant Jacobs replies that "[b]ecause Plaintiff filed this lawsuit in November 2019, Plaintiff must establish that she was on inquiry notice no earlier than November 2016 (for the property claims) and November 2018 (for the personal-injury claims)." [Doc. 39 at 9]. However, Defendant Jacobs maintains that Plaintiff was on inquiry notice as early as the end of 2008, and no later than 2015. Defendant Jacobs claims that Plaintiff fails to respond to the cited judicially noticeable material in Defendants' briefing, as well as that Plaintiff fails "to explain how hundreds of her fellow citizens, along with a local newspaper, were aware of the purported harms caused by the fly-ash spill and cleanup, but Plaintiff did not know and could not have known of these alleged harms." [*Id.* at 10]. Moreover, Defendant Jacobs asserts that Plaintiff fails to offer any supporting authority for her statement that "reasonable due diligence is not required of plaintiffs when the injuries claimed have been fraudulently concealed by defendants." [*Id.* at 11].

First, Plaintiff's personal injury claims are governed by the one-year limitations period set forth in Tenn. Code Ann § 28-3-105(a)(1)(A), while her property damage claims are governed by the three-year limitations period set forth in Tenn. Code Ann. § 28-3-105(1). "A defense predicated on the statute of limitations triggers the consideration of three components—the length

of the limitations period, the accrual of the cause of action, and the applicability of any relevant tolling doctrines." *Redwing v. Catholic Bishop for Diocese of Memphis*, 363 S.W.3d 436, 457 (Tenn. 2012). "The length of the limitations period is perhaps the most straightforward of the three elements," and it is determined by considering the "gravamen" of the complaint. *Id.*

"The second component, the concept of accrual, 'relates to the date on which the applicable statute of limitations begins to run.'" *Robinson v. Baptist Mem'l Hosp.*, 464 S.W.3d 599, 607 (Tenn. Ct. App. 2014) (quoting *Redwing*, 363 S.W.3d at 457). Under the discovery rule, "the cause of action accrues and the statute of limitations commences to run when the injury occurs or is discovered, or when in the exercise of reasonable care and diligence, it should have been discovered." *Mills v. Booth*, 344 S.W.3d 922, 927 (Tenn. Ct. App. 2010) (quoting *Woods v. Sherwin-Williams*, 666 S.W.2d 77, 78 (Tenn. Ct. App. 1983)) (additional internal citations omitted); *see also Robinson*, 464 S.W.3d at 608 ("Under the current discovery rule, a cause of action accrues and the statute of limitations begins to run when the plaintiff has either actual or constructive knowledge of a claim.") (citing *Redwing*, 363 S.W.3d at 459). Lastly, the Court must consider whether any tolling doctrines, including fraudulent concealment, are applicable "that can suspend or extend the running of the limitations period." *Id.*

Ultimately, the Court finds that, with the exception of her nuisance claim, Plaintiff's claims are time-barred on the face of the allegations set forth in the Complaint, and that no tolling exceptions are applicable. The Court agrees with Defendants that the allegations in Plaintiff's Complaint, as well as the judicially noticeable material, demonstrates that Plaintiff should have discovered the alleged injuries "in the exercise of reasonable care and diligence" prior to the expiration of the statute of limitations. *Mills*, 344 S.W.3d at 927. Plaintiff cannot contest that she filed her Complaint on November 7, 2019—which Defendant TVA details is "more than ten years

22

after the December 22, 2008 ash spill and more than four years after the EPA issued a final closure notice on September 15, 2015."  *See* [Doc. 18 at 25].  In fact, Plaintiff's Complaint specifically alleges that Plaintiff's property "was inundated and damaged by toxic ash sludge from the spill which remains on their property or was impacted and damaged by its proximity to the spill," as well as that Plaintiff's "real property and residences were severely damaged by the ash sludge." [*Id.* at ¶¶ 47–48].[3]  Plaintiff also claims that "she and her family have ingested, inhaled, and had direct dermal contact with coal ash through the air and/or in the surface and subsurface soil and water."  [*Id.* at ¶ 19].

Plaintiff asserts that she could not have known the truth about the dangers of fly ash, and thus a cause of action did not exist, prior to the Phase I jury verdict in *Adkisson* delivered on November 7, 2018.  [Doc. 28 at 15]; *see* [Doc. 1 at ¶ 88].  However, "[k]nowledge that an actionable injury has occurred does not require absolute knowledge of the particulars of the injury."  *Wyatt v. A-Best, Co., Inc.*, 910 S.W.2d 851, 857–58 (Tenn. 1995).  "[T]he discovery rule does not delay the accrual of a cause of action and the commencement of the statute of limitations until the plaintiff knows the full extent of the damages."  *Redwing v. Catholic Bishop for Diocese of Memphis*, 363 S.W.3d 436, 459 (Tenn. 2012) (citing *B&B Enters. of Wilson Cty., LLC v. City of Lebanon*, 318 S.W.3d 839, 849 (Tenn. 2010)).  "[T]he statute is tolled only during the period when the plaintiff had no knowledge at all that the wrong had occurred and, as a reasonable person, was not put on inquiry."  *Potts v. Celotex Corp.*, 796 S.W.2d 678, 680–81 (Tenn. 1990) (citing *Hoffman v. Hosp. Affs., Inc.*, 652 S.W.2d 341, 344 (Tenn. 1983)).

---

[3] While the complaint refers to "Plaintiffs' and the putative classes' property," the Court has previously detailed that Plaintiff must demonstrate standing to bring these claims, as well as that her claims are not time-barred.  [*Id.*].

Plaintiff also fails to reconcile her claim that a judicial remedy was not available until the Phase I *Adkisson* verdict with the filing of numerous related cases by residents and property owners in Roane County following the 2008 ash spill. *See In re TVA Ash Spill Litig.*, 805 F. Supp. 2d 468, 472 (E.D. Tenn. 2011) ("This litigation consists of the more than fifty above-captioned cases filed against defendant [TVA] following the December 22, 2008 failure of a coal ash containment dike at TVA's" KIF plant and "[i]n the complaints, plaintiffs allege that they reside, own property, and/or own businesses within the vicinity of the ash spill."); *Chesney v. TVA*, No. 3:09-cv-009-TAV-HBG (E.D. Tenn. Jan. 1, 2009) [Doc. 1] (complaint brought by residential property owners in the vicinity of the KIF plant against TVA and other professional engineering contractors which was included in *In re TVA Ash Spill Litigation*). Moreover, Defendants have detailed the widespread media coverage of both the 2008 ash spill, the dangers of coal ash, and the numerous lawsuits subsequently filed (including both *Chesney* and *Adkisson*).

Therefore, the Court finds that Plaintiff's claims are time-barred because she could have discovered her property damage claims (with the exception of her private nuisance claim) prior to November 7, 2016 and her personal injury claims prior to November 7, 2018 with the exercise of reasonable diligence. *See, e.g.*, *Roane Cty., Tenn. et al. v. Jacobs Eng'g Grp., Inc. et al.*, No. 3:19-CV-206-TAV-HBG, 2020 WL 5836553, at *4 (E.D. Tenn. Sept. 30, 2020) ("Through the exercise of reasonable diligence, Plaintiffs would have understood as early as mid-2009 that fly ash was dangerous to their constituents' health and that such danger would cause Plaintiffs to expend resources to assist in their citizens' economic and medical recovery from the 2008 toxic spill."). The Court also finds that contrary to Plaintiff's arguments, dismissal of these claims is appropriate because "the allegations in the complaint affirmatively show that the complaint is time-barred," and thus "dismissing the claim[s] under Rule 12(b)(6) is appropriate." *Cataldo v. U.S. Steel Corp.*,

24

676 F.3d 542, 547 (6th Cir. 2012) (citing *Jones v. Bock*, 549 U.S. 199, 215 (2007)); *see, e.g.*, *Lutz v. Chesapeake Appalachia, L.L.C.*, 717 F.3d 459, 464 (6th Cir. 2013) (dismissal on a motion under Rule 12(b)(6) is warranted if defendant meets its burden of showing that the allegations in the complaint affirmatively show that the claim is time-barred); *Schmank v. Sonic Automotive, Inc.,* No. E2007–01857–COA–R3–CV, 2008 WL 2078076, at *3 (Tenn. Ct. App. May 16, 2008). The Court will also discuss in greater detail how Plaintiff's fraudulent concealment claim does not toll the statute of limitations, as well as address Plaintiff's temporary nuisance claim.

### 1.     Fraudulent Concealment

"Under the fraudulent concealment doctrine, the statute of limitations is tolled when 'the defendant has taken steps to prevent the plaintiff from discovering he [or she] was injured.'" *Redwing v. Catholic Bishop for Diocese of Memphis*, 363 S.W.3d 436, 462 (Tenn. 2012) (quoting *Fahrner v. SW Mfg., Inc.,* 48 S.W.3d 141, 146 (Tenn. 2001)). "While the burden of proof is on the party asserting the statute of limitations to show the bar, when that showing is made, the burden shifts to the other party to show an exception." *Brown v. Weaver*, No. E2018-00783-COA-R3-CV, 2018 WL 6706285, at *3 (Tenn. Ct. App. Dec. 19, 2018) (citing *Coffey v. Coffey*, No. E2017-00988-COA-R3-CV, 2018 WL 4519988, at *7 (Tenn. Ct. App. Sept. 20, 2018)) (additional internal citation omitted).

Plaintiff incorrectly asserts that "[t]he exercise of reasonable due diligence is not required of plaintiffs when the injuries claimed have been fraudulently concealed by defendants." *See* [Doc. 29 at 10]. This claim is in direct contrast to the Tennessee Supreme Court's finding in *Redwing* that "Plaintiffs asserting the doctrine of fraudulent concealment to toll the running of a statute of limitations must demonstrate that they exercised reasonable care and diligence in pursuing their claim." 363 S.W.3d at 463. "The statute of limitations is tolled until the plaintiff discovers or, in

25

the exercise of reasonable diligence, should have discovered the defendant's fraudulent concealment or sufficient facts to put the plaintiff on actual or inquiry notice of his or her claim." *Id.* "At the point when the plaintiff discovers or should have discovered the defendant's fraudulent concealment or sufficient facts to put the plaintiff on actual or inquiry notice of his or her claim, the original statute of limitations begins to run anew, and the plaintiff must file his or her claim within the statutory limitations period." *Id.* (internal citation omitted).

Due to the reasons discussed above, Plaintiff has not demonstrated that she "exercised reasonable care and diligence in pursuing [her] claim," and the record is sufficient for the Court to determine that Plaintiff's claims are time-barred. *Id.* It is clear that Plaintiff had constructive knowledge of her claims prior to the expiration of the statute of limitations by November 2016 (for the property claims, with the exception of her nuisance claim) and November 2018 (for the personal-injury claims). In addition to the widespread media coverage of both the 2008 ash spill, the dangers of coal ash, the related litigation, and the allegations of Plaintiff's Complaint detail how she should have been aware of her claims prior to the expiration of the statute of limitations.

First, as previously detailed, Plaintiff alleges that her "property was inundated and damaged by toxic ash sludge from the spill which remains on their property." [Doc. 1 at ¶ 47]. Moreover, Plaintiff cites to the Court's August 23, 2012 finding in *In re TVA Ash Spill Litigation*, wherein she alleges that the Court stated "that TVA was liable for negligence in handling fly ash regarding the issue of liability for property damage based open theories of nuisance." [*Id.* at ¶ 336]; *see In re TVA Ash Spill Litig.*, No. 3:09-CV-009, 2012 WL 3647704, at *57 (E.D. Tenn. Aug. 23, 2012). Plaintiff relies upon testimony of "[a] prior TVA witness [who] truthfully testified" that Defendants improperly destroyed videotape and photos of conditions at the site. [Doc. 1 at ¶ 166–67]. However, Defendant Jacobs properly notes that this testimony occurred

more than a year before Plaintiff filed her Complaint. Plaintiff claims that she could not discover her potential claims due to Defendants' fraudulent concealment, but also admits, when discussing the EPA's Agreed Order of Consent, that the cases in *In re TVA Ash Spill Litigation* and *Adkisson* "related to the exact factual issues in this case regarding liability." [Doc. 1 at ¶ 325].

Therefore, Plaintiff cannot support her allegation that "[t]he statute of limitations as to these Plaintiffs began to run anew as of [ ] November 8, 2018, the date of the jury verdict in *Adkisson*." [Doc. 29 at 19]. The factual allegations in Plaintiff's Complaint, as well as material the Court found was properly judicially noticeable, establishes that Plaintiff knew sufficient facts to put her on notice that she had been injured as a result of Defendants' alleged wrongful conduct prior to the expiration of the applicable statute of limitations. *See Vandergriff v. ParkRidge E. Hosp.*, 482 S.W.3d 545, 556–57 (Tenn. Ct. App. 2015) ("These paragraphs establish that Plaintiffs knew sufficient facts to put them on notice that they had been injured as a result of Defendants' wrongful conduct in 2012."); *see also Chunn v. Se. Logistics, Inc.*, 794 F. App'x 475, 477 (6th Cir. 2019) ("The [fraudulent concealment] exception doesn't relieve plaintiffs of their obligations to investigate their rights [under Tennessee law]."); *Irvin v. Bass, Berry & Sims, PLC*, No. M2014-00671-COA-R3-CV, 2015 WL 9946272, at *4 (Tenn. Ct. App. Apr. 15, 2015) ("We conclude the doctrine of fraudulent concealment is not applicable under these facts. Even were we to assume that Wilson Sims or Bass, Berry and Sims affirmatively concealed material facts, Mr. Irvin failed to exercise reasonable diligence in the pursuit of his claims.").

Moreover, "to the extent that [Plaintiff's] fraudulent concealment claim is predicated on the recent leaks of radiation and arsenic into their groundwater, [Plaintiff] herein [has] not pleaded sufficient allegations establishing a duty on Defendants' part to reveal these leaks for purposes of such claim." *Roane Cty., Tenn. et al. v. Jacobs Eng'g Grp., Inc. et al.*, No. 3:19-CV-206-TAV-

HBG, 2020 WL 5836553, at *5 (E.D. Tenn. Sept. 30, 2020). Here, similar to the *Roane County* litigation, Plaintiff's "only attempt to establish a duty on the part of Defendants to specifically disclose the leaking arsenic and radiation," *Id.*, merely consists of allegations that she and the putative class "were direct intended third party beneficiaries," and "[f]ailure to warn by defendants is a violation of the legal obligations that interfered with the public's right to know in violation of the EPA AOC, OSHA- CERCLA and RCRA and various other laws that impose these legal duties to the defendants with regard to the duty to inform and protect the general public." [Doc. 1 at ¶¶ 242, 250]. However, the Court again finds that "[t]hese conclusory legal assertions . . . are unadorned with any further factual enhancement necessary to survive even the liberal pleading standard of Fed. R. Civ. P. 8(a)(2)," that Plaintiff has failed to offer "any factual allegations to support" her claim that she was an "intended benefici[ary] of the cleanup contract between the TVA and Jacobs," as well as that Plaintiff fails to point "to any specific language from any law or EPA mandate establishing a duty on the part of Defendants to disclose the leaks—Plaintiff[ ] make[s] only the conclusory assertion that these sources mandate such disclosure." *Roane Cty.*, 2020 WL 5836553 at *5.

Therefore, the Court finds that because Plaintiff cannot establish that she could not have discovered the cause of action despite exercising reasonable care and diligence, the fraudulent concealment exception does not toll the running of the statute of limitations for Plaintiff's claims.

### 2. Private Nuisance

Defendant TVA's brief largely addresses Plaintiff's nuisance claim, and maintains that Plaintiff's property damage claims are time barred because they are "premised on alleged damage to or physical invasion of coal ash particles onto her property from the spill and/or activities associated with the CERCLA recovery project." [Doc. 18 at 25].

28

Based on the factual background detailed above, the Court agrees that such claims would be time-barred. In Defendant TVA's motion to dismiss, it solely focuses on Plaintiff's allegations of "permanent nuisances arising from TVA's operation of the Kingston Fossil Plant) (*i.e.*, the December 22, 2008 ash spill and the CERCLA recovery project)." [*Id.*]. However, Plaintiff points to "ongoing[ ] and new current leaks of fly ash constituents on or about 2017-2019, including radiation and arsenic into the surrounding groundwater above permissible exposure limits that the TVA attempted to hide from TDEC and the Roane County Community, including Plaintiff and the putative class." [Doc. 1 at ¶ 51].

"A nuisance has been defined as anything which annoys or disturbs the free use of one's property, or which renders its ordinary use or physical occupation uncomfortable." *Pate v. City of Martin*, 614 S.W.2d 46 at 47 (Tenn. 1981). "A private nuisance is created where a landowner uses his property in such a manner as to unreasonably interfere with plaintiff's use or enjoyment of his own property." *Sadler v. State*, 56 S.W.3d 508, 511 (Tenn. Ct. App. 2001). "In Tennessee, a nuisance is characterized as either temporary or permanent." *Leggett v. Dorris*, No. M2008-00363-COA-R3-CV, 2009 WL 302290, at *2 (Tenn. Ct. App. Feb. 6, 2009) (citing *Clabo v. Great American Resorts, Inc.*, 121 S.W.3d 668, 671 (Tenn. Ct. App. 2003)). "The distinction is critical because the two categories require different measures of damages and different standards for determining when the statute of limitations begins to run." *Id.*

A temporary nuisance is one that "can be corrected by the expenditure of labor or money." *Pate*, 614 S.W.2d at 48. "Where the nuisance is temporary, damages to property affected by the nuisance are recurrent and may be recovered from time to time until the nuisance is abated." *Id.* "The measure of such damages (is) the injury to the value of the use and enjoyment of the property, which may be measured to a large extent by the rental value of the property, and extent

29

that rental value is diminished." *Id.* (quoting *City of Murfreesboro v. Haynes*, 82 S.W.2d 236 (Tenn. Ct. App. 1935)); *see, e.g.*, *Clabo*, 121 S.W.3d at 671. "A permanent nuisance is one that is 'presumed to continue indefinitely, and is at once productive of all the damage which can ever result from it.'" *Id.* (quoting *Caldwell v. Knox Concrete Prods., Inc.,* 391 S.W.2d 5, 11 (Tenn. Ct. App. 1964)). "The proper measure of damages for a permanent nuisance is 'the injury to the fee or permanent value of the property.'" *Id.* (internal quotation omitted).

"A proper classification of the nuisance, either temporary or permanent, must be made in order to analyze a statute of limitations defense. A nuisance claim, because it is an action for an injury to personal or real property, is governed by a three year statute of limitations." *Leggett v. Dorris*, No. M2008-00363-COA-R3-CV, 2009 WL 302290, at *2 (Tenn. Ct. App. Feb. 6, 2009) (citing Tenn. Code Ann. § 28-3-105). For a permanent nuisance, "the statute of limitations commences to run from the time of the creation of the nuisance." *Anderson v. Am. Limestone Co.*, 168 S.W.3d 757, 761 (Tenn. Ct. App. 2004). "When a nuisance is temporary and continuous, the continuation is a new offense entitling a plaintiff to recover damages occurring within the limitations period, even though the nuisance has existed longer than the limitations period." *Roles-Walter v. Kidd*, No. M2017-01417-COA-R3-CV, 2018 WL 1920166, at *3 (Tenn. Ct. App. Apr. 24, 2018) (citing *Kind v. Johnson City*, 478 S.W.2d 63, 66 (Tenn. Ct. App. 1970)).

Defendant TVA claims that "[n]otwithstanding Plaintiff's argument, the actual allegations of the Complaint attempt to plead a permanent, not a temporary nuisance, and that claim is time-barred." [Doc. 38 at 15]. However, "the characterization of a nuisance is a question of fact." *Leggett*, 2009 WL 302290 at *4; *see, e.g.*, *Twenty Holdings, LLC v. Land S. TN, LLC*, No. M2018-01903-COA-R3-CV, 2019 WL 4200970, at *16 (Tenn. Ct. App. Sept. 5, 2019) ("The question of whether an injury to real property is temporary or permanent, however, is question of fact."). The

Court agrees that any permanent nuisance claim stemming from the initial spill in 2008 would be time-barred, as Plaintiff would be aware that such a claim existed prior to the expiration of the statute of limitations. Even with a temporary nuisance claim, Plaintiff would not be able to recover damages occurring more than three years before the filing of her complaint.

However, Plaintiff claims that the Complaint alleges a temporary nuisance claim due to "ongoing, and new current leaks of fly ash constituents on or about 2017-2019" stemming from the alleged reckless nature of the remediation efforts. [Doc. 1 at ¶¶ 51, 58]. In the Complaint, Plaintiff's Eighth Cause of Action refers to a "Private Nuisance" and does not distinguish between a temporary or permanent nuisance. [*Id.* at p. 69]. Plaintiff alleges that "[a]t the time the above-described, intentional, unreasonable, negligent, and/or reckless acts were performed by Defendant, Defendant had good reason to know or expect that large quantities toxic heavy metals including but not limited to lead, arsenic, and cadmium, as well as other toxic chemicals would and/or could be introduced into the properties of Plaintiffs and the Property Owner class." [*Id.* at ¶ 353]. Additionally, Plaintiff claims that "[t]he introduction of unknown quantities of toxic heavy metals including but not limited to lead, arsenic, and cadmium, as well as other toxic chemicals onto the property of the Plaintiffs and Property Owner Subclass unreasonably interfered with the use and enjoyment of their property." [*Id.* at ¶ 356].

Throughout the factual allegations of the Complaint, however, Plaintiff refers to a temporary nuisance from the recent and ongoing leaks several times. [*Id.* at ¶ 110 (alleging the Defendants engaged in "temporary nuisance due to . . . the recent 2018 secret release of high levels of radiation and arsenic from KIF"); ¶ 123 ("As a result of the improper repair of the fly ash impoundment a more recent and ongoing nuisance has arisen."); and ¶ 147 ("This temporary nuisance has been enhanced by ongoing negligent leaks of toxins at KIF . . . .")]. Therefore, while

31

providing Plaintiff all reasonable inferences based on the averments in her Complaint, the Court concludes that she has pled facts sufficient to establish a temporary nuisance claim at this stage. The Court will later address Defendant Jacobs' allegation that Plaintiff's private nuisance claims improperly fails to allege any plausible connection to Jacobs.  *See infra* Section III(C)(6).

C.   **Remaining Claims**

As detailed above, the Court finds that Plaintiff's personal injury claims and property damage claims, with the exception of her nuisance claim, are time-barred.  However, the Court will also address several specific arguments with respect to Plaintiff's claims, largely relying on the similar analysis utilized by this Court in the *Roane County* litigation.

1.   **Promissory Estoppel**

Defendants assert that Plaintiff's promissory estoppel claim does not allege an enforceable promise, and thus does not state a claim as a matter of law.  The Middle District of Tennessee detailed the requirements of promissory estoppel under Tennessee law, stating:

> A claim for promissory estoppel in Tennessee, also known as "detrimental reliance," has three elements: "(1) a party made a promise which the promisor should reasonably have expected to induce the action or forbearance of the promise; (2) the promise does induce that action or forbearance; and (3) injustice can be avoided only by enforcing the promise."  The key element is, of course, the promise.  Tennessee does not liberally apply the doctrine of promissory estoppel and limits its application to exceptional cases "verging on actual fraud."

*Doe v. Belmont Univ.*, 334 F. Supp. 3d 877, 901 (M.D. Tenn. 2018) (internal citations omitted). The heightened pleading standard under Federal Rule of Civil Procedure 9(b) is applicable to Plaintiff's promissory estoppel claim.  *See LeBlanc v. Bank of America, N.A.*, No. 2:13-cv-02001-JPM-tmp, 2013 WL 3146829, at *16 (W.D. Tenn. June 18, 2013) (dismissing a promissory estoppel claim under Tennessee law on the ground that plaintiff had not asserted when the alleged promise was made or who specifically made the alleged promise).  Therefore, Plaintiff must plead

32

sufficient allegations to establish that "(1) that a promise was made; (2) that the promise was unambiguous and not unenforceably vague; and (3) that they reasonably relied upon the promise to their detriment." *Id.* (quoting *Chavez v. Broadway Elec. Serv. Corp.*, 245 S.W.3d 398, 404 (Tenn. Ct. App. 2007)).

Plaintiff asserts that Defendant TVA's allegation that the Complaint only pleads two promises, that fly ash is safe and that TVA would pay the medical expenses of the individuals harmed by fly ash, is misleading as Plaintiff "has asserted in [her] Complaint how Defendants misrepresented the safety of the ash and the damages suffered by the Plaintiffs because of the misrepresentations." [Doc. 28 at 22]; *see* [Doc. 1 at ¶¶ 132–35, 138, 221, 224, 232–34, 236]. Plaintiff alleges that Defendant TVA promised truthful disclosure of information regarding the safety of the fly ash spilled, that this promise was unambiguous and not unenforceably vague, and Plaintiff reasonably relied on TVA's promises and refrained from taking legal action. Plaintiff also alleges that Defendant TVA's statement that fly ash was safe "induced the citizens of the community to forbear getting proper medical treatment, prevented public health care providers from obtaining proper information, and substantially increased health care problems and costs." [*Id.* at ¶ 224]. Similarly, Plaintiff asserts that the Complaint "alleges that Jacobs made false representations on the safety of ash, that they never discussed its hazards, that they were required by law to be truthful and accurate to assist in protecting human health; [and] that as a direct and proximate cause certain individuals have suffered various diseases and conditions." [Doc. 29 at 22]. Plaintiff claims that "Defendant manipulated the media to disseminate the media to disseminate false and misleading messages, that they mishandled tests and made many representations." [*Id.* (citing Doc. 1 at ¶ 211, 220, 223, 226, 228, 230, and 235)].

33

However, contrary to Plaintiff's argument, the Court again finds that Plaintiff has "identified several general promises with no specific details regarding those promises" in the asserted cause of action for promissory estoppel. *Roane Cty., Tenn. et al. v. Jacobs Eng'g Grp., Inc. et al.*, No. 3:19-CV-206-TAV-HBG, 2020 WL 5836553, at *3 (E.D. Tenn. Sept. 30, 2020). Similar to the *Roane County* litigation, Plaintiff's alleged promises that Defendants made can be characterized as: "(1) [Defendants'] truthful disclosure of information; (2) that 'fly ash' (a byproduct of the burning of coal) is safe, was being tested appropriately, was adequately managed, and was being appropriately remediated upon its spill; and (3) that TVA would pay the medical expenses of those people affected by the spill." *Id.*

While Plaintiff claims that Ms. Anda Ray, an agent of TVA, "promised that the TVA would pay the medical expenses of those people affected by the spill" [Doc. 1 at ¶ 134], she fails to identify the "time [and] place" of this statement. *Am. Accessories, Int'l, LLC v. Conopco, Inc.*, No. 3:15-CV-49-TAV-HBG, 2017 WL 52606, at *6 (E.D. Tenn. Jan. 4, 2017); *see, e.g.*, *Roane Cty.*, 2020 WL 5836553 at *3. With respect to Plaintiff's claims that Defendants promised that fly ash was safe, the Court notes that Plaintiff merely alleges that Defendants "promised all community leaders [that] fly ash was safe," as well as that "Ms. Ray and Mr. Scott Brooks promised that the fly ash was safe from 2009 to 2019." [Doc. 1 at ¶¶ 54, 135]. Here, Plaintiff again fails to allege the time and place of this statement, and thus it is not sufficiently pled.

Lastly, the Court finds that any remaining alleged statements, including purported promises to truthfully disclose information, appropriate testing, or "whatever unspecified representations about the remediation process are ambiguous and unenforceably vague." *Roane Cty.*, 2020 WL 5836553 at *3. Simply put, "a representation differs from a promise." *Builders Insulation of Tenn., LLC v. S. Energy Sols.*, No. 2:17-CV-02668-TLP-TMP, 2018 WL 5539805, at *3 (W.D.

34

Tenn. Oct. 29, 2018) (internal citations omitted). Therefore, Plaintiff has failed to plausibly allege a promissory estoppel claim against Defendants TVA and Jacobs.

### 2. Intentional or Reckless Failure to Warn and Negligence

Plaintiff's Third Claim for Relief is for "Intentional or Reckless Failure to Warn," as Plaintiff asserts that Defendants failed to warn her that fly ash was hazardous, as well as fraudulently concealed this fact. [Doc. 1 at p. 48–49]. First, the Court has previously detailed how such claims would be time-barred. Moreover, regarding Plaintiff's "allegation that Defendants intentionally or recklessly failed to warn [Plaintiff] of more recent toxic leaks into . . . groundwater, to the extent that Plaintiff[ ] attempt to plead an 'intentional failure to warn' claim on these facts, the Court fails to see how such a claim is different from [Plaintiff's] fraudulent concealment claim that has been dismissed for [Plaintiff's] failure to identify a duty of disclosure on Defendants' part." *Roane Cty.*, 2020 WL 5836553 at *5. Similarly, the Court's discussion of the discovery rule also illustrates how Plaintiff's negligence claim would be time-barred.

### 3. Negligence Per Se

Plaintiff's fifth claim for relief is for negligence per se. [Doc. 1 at ¶¶ 306–319]. "Under Tennessee law, a plaintiff must establish three elements to recover on the basis of negligence per se: (1) defendant violated a statute or ordinance which imposes a duty or prohibits an act for the benefit of a person or the public; (2) the injured party was within the class of persons whom the legislative body intended to benefit and protect; and (3) the negligence was the proximate cause of the injury." *Roane Cty*, 2020 WL 5836553 at *7 (citing *Glass v. Nw. Airlines, Inc.*, 761 F. Supp. 2d 734, 746 (W.D. Tenn. 2011) (internal citations omitted); *Smith v. Owen*, 841 S.W.2d 828, 831 (Tenn. Ct. App. 1992)).

35

However, "[t]he negligence per se doctrine is not a magic transformational formula that automatically creates a private negligence cause of action for the violation of every statute." *Rains v. Bend of the River*, 124 S.W.3d 580, 590 (Tenn. Ct. App. 2003). Plaintiff has "made no attempt to expound on [her] conclusory allegations that Defendants violated the laundry list of the cited statutes and regulations; instead Plaintiff[ ] simply lists [numerous statutes, orders, and regulations] and assert[s] that Defendants violated those statutes and regulations." *Roane Cty.*, 2020 WL 5836553 at *7. Additionally, Plaintiff fails to address her negligence per se claims in her Response [Doc. 28] to Defendant TVA's motion to dismiss. In her Response [Doc. 29] to Defendant Jacobs' motion to dismiss, Plaintiff merely lists two paragraphs of generic case law. In fact, Plaintiff cites to case law that "to trigger this doctrine, the statue must establish a specific standard of conduct." *See Rains*, 124 S.W.3d at 590.

The lack of analysis in Plaintiff's briefing is matched by the allegations of her Complaint. As Plaintiff also fails to plead "any facts asserting that the statutes and regulations that [she] allege[s] Defendants violated are meant to benefit and protect [her]," Plaintiff's "negligence per se claim cannot be viewed as giving Defendants fair notice of what [Plaintiff's] allegations are with regard to Defendants' alleged violations of the list of statutes and regulations." *Roane Cty.*, 2020 WL 5836553 at *7. Therefore, Plaintiff's negligence per se claim should also be dismissed.

### 4.    Offensive Non-Mutual Collateral Estoppel

Plaintiff's sixth claim for relief seeks to impose liability on Defendant TVA from Defendant Jacobs' verdict by application of the doctrine of offensive non-mutual collateral estoppel and for Defendant TVA's nondelegable duty. [Doc. 1 at ¶¶ 320–42]. "Although Tennessee's highest court has referred to the theory of collateral estoppel as a 'claim[,]' that same court has identified that collateral estoppel is simply a legal tool that allows a party to prevail on a

36

cause of action and is not a legitimate cause of action in and of itself." *Roane Cty.*, 2020 WL 5836553 at \*8 (citing *Bowen ex rel. Doe v. Arnold*, 502 S.W.3d 102, 107 (Tenn. 2016)). "In other words, there is no such thing as a substantive claim for offensive non-mutual collateral estoppel; rather, collateral estoppel is a tool Plaintiffs may use to establish the conclusiveness of issues related to legitimate substantive causes of action." *Id.* Therefore, the Court recommends that Plaintiff's attempted cause of action for offensive non-mutual collateral estoppel should be dismissed.

### 5. Medical Monitoring

Plaintiff's seventh cause of action asserts the negligent failure to perform baseline medical and perimeter air monitoring. [Doc. 1 at p. 68]. Plaintiff asserts that "[a]s a proximate result of their exposure, the Plaintiffs and the Subclasses have a significantly increased risk of contracting a serious latent disease," and "[a] monitoring procedure exists that makes the early detection of such latent diseases possible." [*Id.* at ¶¶ 345–46].

In their briefing, the parties dispute whether an independent cause of action for medical monitoring exists. Plaintiff asserts that "Tennessee courts have recognized that a cause of action exists for medical monitoring." [Doc. 28 at 27]; *see Sutton v. St. Jude Med. S.C., Inc.*, 419 F.3d 568, 576 (6th Cir. 2005) ("In an effort to guide the district court on remand, we note that although Tennessee law is murky on the issue of whether claims for medical monitoring are cognizable, there are reasons why such claims are most probably proper. First, we note that two Tennessee cases at least suggest that the state recognizes medical monitoring claims.").

However, in *Sutton*, the Sixth Circuit detailed that "medical monitoring is more properly considered one of a number of possible remedies to an underlying tort, rather than a separately actionable tort." *Id.* at 572; *see, e.g.*, *Craft v. Vanderbilt Univ.*, 174 F.R.D. 396, 400 (M.D. Tenn.

37

1996) ("As the Court finds that it is more accurate to characterize medical monitoring as a remedial request for the exposed women and exposed children classes rather than a separate class, the Court grants Defendants' Motion to Decertify the Medical Monitoring Class and will treat medical monitoring as a requested remedy.").  Therefore, if the District Judge finds that Plaintiff's personal injury claims are time-barred, the undersigned recommends that Plaintiff's medical monitoring claim should also be dismissed as an independent cause of action.

### 6.        Private Nuisance

Defendant Jacobs asserts that Plaintiff's private nuisance claim fails because it does not allege any plausible connection to Jacobs.  [Doc. 23 at 30].  Defendant Jacobs maintains that "the Complaint fails to plausibly allege *Jacobs* did anything to create the alleged nuisance of 'toxic' coal ash 'bec[oming] airborne and contaminat[ing] the Plaintiffs' . . . properties."  [*Id.* (quoting Doc. 1 at ¶ 352)].  Additionally, Defendant Jacobs claims that "even if the Court generously interprets the Complaint as alleging that the 'improper repair of the fly ash impoundment' created a nuisance, [*Id.* (quoting Doc. 1 at ¶ 123)], this claim fails because Plaintiff acknowledges that Defendant Jacobs' job was to provide "complete safety oversight," [Doc. 1 at ¶ 67], rather than conduct the cleanup and remediation.

Plaintiff responds that her Complaint adequately pleads a private nuisance claim against Defendant Jacobs.  *See* [Doc. 29 at 27].  Plaintiff asserts that the Complaint alleges that "[a]t the time the above-described, intentional, unreasonable, negligent, and/or reckless acts were performed by Defendant, Defendant had good reason to know or expect that large quantities of toxic heavy metals including but not limited to lead, arsenic, and cadmium, as well as other toxic chemicals would and/or could be introduced into the properties of Plaintiffs and the Property Owner class."  [Doc. 1 at ¶ 353].

38

Defendant Jacobs replies that "Plaintiff misleadingly suggests that the nuisance allegations are directed 'towards Jacobs.'" [Doc. 39 at 16]. Defendant Jacobs maintains that Plaintiff has failed to allege any facts "establishing Jacobs' responsibility for creating or maintaining any private nuisance," as Jacobs "was hired well after the spill and assisted with site safety management." [*Id.*].

In the Complaint, Plaintiff alleges that Defendant Jacobs was "to provide complete safety oversight for TVA and the EPA." [Doc. 1 at ¶ 67]. Plaintiff also states that Defendant Jacobs "was the prime contractor at the KIF cleanup and was to abide" by the EPA Order of Consent, the TVA contract, and the SWSHP "to manage the site cleanup and provide a safe environment for the surrounding community that could be exposed to the constituents of the fly ash due to activity at the KIF toxic spill remediation site." [*Id.* at ¶ 63]. Plaintiff avers that "[d]ue to the reckless nature of the improper remediation, new radiation and arsenic leaks occurred in 2017 and the leaks continue to the present day." [*Id.* at ¶ 58].

When describing the recent leaks, Plaintiff alleges that "[t]he various containment structures and retention dikes enclosing the Class II landfill and other waste retention and control systems at the Kingston Fossil Plant have suffered numerous problems in the recent past, including leaks, seepages, and 'blowouts,'" [*Id.* at ¶ 39], as well as that "[t]he asset recovery occurred and continues to occur to the present day, due in part to hidden, ongoing, and new current leaks of fly ash constituents on or about 2017-2019, including radiation and arsenic into the surrounding groundwater above permissible exposure limits that the TVA attempted to hide from TDEC and the Roane County Community, including Plaintiff and the putative class." [*Id.* at ¶ 51]. Similarly, Plaintiff alleges that Defendant TVA "improperly permitted the false announcement of completion of the remediation . . . and upon information and belief[,] the site has not been properly or

39

completely remediated which contributed to the recent and ongoing leaks of arsenic and radiation in excess of permissible exposure limits." [*Id.* at ¶ 106]. Plaintiff claims that Defendant TVA "obstructed the truth from the plaintiffs by illegally destroying video evidence," as well as that Defendant Jacobs "colluded and conspired to commit the same transgression to conceal video evidence." [*Id.* at ¶¶ 107–108]. Lastly, under her private nuisance claim, Plaintiff alleges that "Defendant's negligent, reckless, willful, and/or wanton actions and/or intentional failures to act caused an unknown quantity of toxic heavy metals including but not limited to lead, arsenic, and cadmium, as well as other toxic chemicals chromium to be released into the air as well as the surface and ground waters in and around the Site." [*Id.* at ¶ 355].

Therefore, the Court finds that, accepting the factual allegations as true, Plaintiff plausibly avers sufficient facts to allow the Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiff has alleged that Defendant Jacobs was involved in the remediation process, that the reckless nature of the remediation process resulted in new radiation and arsenic leaks, and that Defendant Jacobs had good reason to know that toxic chemicals could be introduced into Plaintiff's property. Accordingly, the Court will not recommend that Plaintiff's private nuisance claim against Defendant Jacobs be dismissed at this stage of litigation.

### 7. Trespass

Defendants assert that Plaintiff's trespass claim should be dismissed because it fails to adequately plead an intentional act as required under Tennessee law. Additionally, both Defendants claim that Plaintiff fails to allege that either Defendant intentionally caused coal ash to enter her property. *See* [Doc. 18 at 30–31; Doc. 23 at 31].

Plaintiff first responds that her trespass claim adequately alleges that Defendant TVA intentionally caused coal ash to enter her property. Plaintiff points to her allegations in the Complaint that "Defendants created, transported, and stored coal ash in such a manner so as to cause repeated, separate, and recurrent injuries to Plaintiffs' properties" [Doc. 1 at ¶ 36]; that "Defendants created a condition which has resulted in the continuing discharge of contaminants via surface water, groundwater, and air onto Plaintiffs' land which occurs to this day, and Defendants have breached their legal duties in failing to take action to remedy the condition" [*Id.* at ¶ 365]; "Defendants negligently, recklessly, and/or intentionally produced, stored, and transported coal ash so as to contaminate Plaintiff's and class members' property" [*Id.* at ¶ 366]; and "Defendants knew that it was substantially certain that its acts and omissions described above would threaten public health and cause extensive contamination of property, including groundwater collected for drinking. Defendants committed each of the above described acts and omissions knowingly, willfully, and/or with fraud, oppression, or malice, and with conscious and/or reckless disregard for the health and safety of others, and for Plaintiff's property rights" [*Id.* at ¶ 368]. *See* [Doc. 28 at 28].

With respect to Defendant Jacobs, Plaintiff responds that "Defendants created a condition which has resulted in the continuing discharge of contaminants via surface water, ground water, and air onto Plaintiffs' land which occurs to this day," Defendants breached their duty to remedy the condition, and as a direct and proximate result of Defendants' trespass, "Plaintiff has suffered and continues to suffer property damage requiring investigation, remediation, and monitoring costs to be determined at trial." [Doc. 29 at 29].

"[A] trespass claim under Tennessee law may be premised upon the entry onto property of intangible particles and . . . there is no requirement of actual and substantial harm."

41

*In re Tennessee Valley Auth. Ash Spill Litig.*, 805 F. Supp. 2d 468, 484 (E.D. Tenn. 2011) (noting, when addressing a motion for summary judgment, this does not "obviate the requirement that plaintiffs must show causation, that particles from the ash spill, either tangible or intangible, entered plaintiffs' properties and would not have done so 'but for' actionable conduct by TVA").

Defendants cite *Twenty Holdings, LLC v. Land South TN, LLC*, where the Tennessee Court of Appeals identified the essential elements of a common law trespass claim as: (1) an intentional entry or holdover, (2) by the defendant or a thing; (3) without consent or legal right. No. M2018-01903-COA-R3-CV, 2019 WL 4200970, at *8 (Tenn. Ct. App. Sept. 5, 2019); *see, e.g.*, *Morrow v. Metro. Gov't of Nashville & Davidson Cty.*, No. 3:19-CV-00351, 2020 WL 5106763, at *6 (M.D. Tenn. Aug. 31, 2020); *City of Townsend v. Damico*, No. E2013-01778-COA-R3CV, 2014 WL 2194453, at *3 (Tenn. Ct. App. May 27, 2014) ("The controlling issue is the intent to complete the physical act, regardless if, in so acting, the actor did not intend to commit a trespass and acted in good faith.") (quoting 75 Am. Jur. 2d Trespass § 5 (2014)).

In *Twenty Holdings, LLC*, the Tennessee Court of Appeals found that "specific intent is not required," as "[t]respass to realty is an intentional tort in the sense that it involves the intent to commit an act that violates a property right, or would be practically certain to have that effect, although the actor may not know the act he or she intends to commit is such a violation." 2019 WL 4200970 at *8 (citing 75 Am. Jur. 2d *Trespass* § 23). Ultimately, the Tennessee Court of Appeals found that "[g]iven the lack of Tennessee law suggesting that a trespass may occur in the absence of an intentional act by the defendant to enter the plaintiff's property, we concur with the cited authority that requires an intentional act to sustain a claim of trespass." *Id.* at *9 (noting "[h]ere, whether by virtue of negligence or recklessness, the tractor-trailer was not intentionally placed on Plaintiff's property" and affirming trial court's granting of defendants' motion for a

directed verdict as to plaintiff's trespass claim); *see also Miles v. Huff's Foodtown, Inc.*, No. 85-158-II, 1986 WL 1786, at *8 (Tenn. Ct. App. Feb. 11, 1986) ("In trespass cases such as this one, involving the removal of lateral support by an excavation upon the defendants' own land and a subsequent injury to plaintiff's property, we think there should be persuasive proof that defendant acted intentionally to trespass on plaintiff's property. We do not find such proof in the record of this case.")

Here, while the Court has detailed the parties' arguments regarding whether Plaintiff has alleged an intentional act, Plaintiff's trespass claim is ultimately time-barred due to the previous analysis of the applicable statute of limitations and the discovery rule. Moreover, Plaintiff has failed to detail how any exception exists for her trespass claim, as the Court has already found that Plaintiff's claim of fraudulent concealment does not toll the statute of limitations. Therefore, the undersigned will also recommend that Plaintiff's trespass claim be dismissed.

**D.      Service of TVA**

Defendant TVA moves to dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(4) and (5), as it alleges that Plaintiff "did not properly or timely perfect service of process on TVA." [Doc. 18 at 31]. Defendant TVA contends that Plaintiff failed to properly follow the requirements of Fed. R. Civ. P. 4(i), which details the means of service on a United States agency.

Federal Rule of Civil Procedure 12(b)(5) authorizes courts to dismiss an action for insufficient service of process. "Due process requires proper service of process for a court to have jurisdiction to adjudicate the rights of the parties." *O.J. Distrib., Inc. v. Hornell Brewing Co.,* 340 F.3d 345, 353 (6th Cir. 2003). The plaintiff is responsible for serving the summons and complaint in accordance with Federal Rule of Civil Procedure 4 and, in particular, within the time permitted by Rule 4(m). *See* Fed. R. Civ. P. 4(c)(1). "[A]ctual knowledge and lack of prejudice cannot take

43

the place of legally sufficient service." *LSJ Inv. Co. v. O.L.D., Inc.*, 167 F.3d 320, 324 (6th Cir. 1999). "[T]he requirement of proper service of process 'is not some mindless technicality.'" *Friedman v. Presser*, 929 F.2d 1151, 1156 (6th Cir. 1991) (internal quotation omitted). Rather, it is an "essential prerequisite to the Court gaining personal jurisdiction over the defendant." *Tanksley v. TVA*, No. 1:16-cv-487, 2017 WL 6391473, at *3 (E.D. Tenn. Dec. 14, 2017).

At the same time, "[c]ourts construe provisions of Rule 4 liberally in order to uphold service, requiring only 'substantial compliance.'" *Young's Trading Co. v. Fancy Import, Inc.*, 222 F.R.D. 341, 343 (W.D. Tenn. 2004) (quoting *Jackson v. Hayakawa*, 682 F.2d 1344, 1347 (9th Cir. 1982)); *see Brown v. Nabors*, No. 3:09-cv-927, 2011 WL 2443882, at *10 (M.D. Tenn. June 15, 2011) ("Federal courts, however, unlike the Tennessee state courts, construe the provisions of Rule 4 liberally in order to uphold service, requiring only 'substantial compliance.'") (collecting cases).

Under Rule 4(i)(2), the plaintiff "must serve the United States and also send a copy of the summons and of the complaint by registered or certified mail to the agency." Fed. R. Civ. P. 4(i)(2). More specifically, Rule 4(i)(2) provides that a plaintiff must "deliver a copy of the summons and of the complaint to the United States Attorney for the district where the action is brought . . . [or] send a copy of each by registered or certified mail to the civil-process clerk at the United States attorney's office," and "send a copy of each by registered or certified mail to the Attorney General of the United States at Washington, D.C." Fed. R. Civ. P. 4(i)(1)(A) & (B). Rule 4(m) requires the Court to dismiss the action without prejudice if a defendant is not served within ninety days after the complaint is filed, but states if the plaintiff shows good cause for the failure to serve within ninety days, the Court must extend the time for service for an appropriate period. Fed. R. Civ. P. 4(m).

44

"Therefore, to properly complete service of process in this case, plaintiff was required to serve the U.S. Attorney General, [and] the U.S. Attorney for the Eastern District of Tennessee . . . all within the time period provided by Rule 4(m)." *Tanksley v. TVA*, No. 1:16-CV-487-TAV-SKL, 2017 WL 6391473, at *3 (E.D. Tenn. Dec. 14, 2017). Defendant TVA maintains that Plaintiff filed her Complaint on November 7, 2019 [Doc. 1], and the Clerk of Court issued a summons to "Tennessee Valley Authority" [Doc. 7-2] on December 17, 2019, and Plaintiff delivered copies of that summons and the Complaint to Defendant TVA on January 3, 2020. Defendant TVA alleges that it then informed Plaintiff of the requirements for service under Rule 4(i)(2), as well as the requirements under Rule 4(m), on January 8, 2020. [Doc. 18-1].

Then, Defendant TVA notes that the Clerk of Court issued a summons to the "U.S. Attorney's Office" on January 28, 2020 [Doc. 15], and on February 6, 2020, issued a summons to the "Attorney General of the United States" [Doc. 16]. Defendant TVA asserts that "[b]oth of these summonses were deficient . . . under Rule 12(b)(4) because . . . neither summons is directed to TVA." [Doc. 18 at 32]. Plaintiff delivered the allegedly "defective summons and complaint to the Attorney General" on February 22, 2020 [*Id.*], and Defendant TVA informed Plaintiff of the untimely service and reserved its right to seek dismissal on March 9, 2020 [Doc. 18-2]. Defendant TVA maintains that despite this letter, "[t]he docket reflects that Plaintiff made no attempt since then to correct the defective form of process or untimely service on TVA." [Doc. 18 at 33].

Plaintiff responds that the issued summons on December 18, 2019 for Defendant TVA "was incorrectly addressed to Defendant TVA at 400 West Summit Hill Drive . . . instead of the Attorney General of the United States and the U.S. Attorney General for the Eastern District of Tennessee pursuant to Fed. R. Civ. P(i)." [Doc. 28 at 29]. Plaintiff then claims that after receiving Defendant's letter [Doc. 18-1], Plaintiff attempted service of the December 18, 2019 summons on

the Attorney General of the United States and the U.S. Attorney for the Eastern District of Tennessee on or about January 27, 2020, but "Plaintiff's process server was unable to complete service because the summonses [were] addressed to TVA and not the Attorney General of the United States" and the U.S. Attorney for the Eastern District of Tennessee. [Doc. 28 at 29]. Plaintiff claims that it then "served the Attorney General of the United States and U.S. Attorney General for the Eastern District of Tennessee on February 14, 2020." [*Id.* at 30]; *see* [Doc. 28-1].

It is undisputed that Plaintiff failed to serve TVA—by serving both the U.S. Attorney General and the U.S. Attorney for the Eastern District of Tennessee—within the ninety days required under Rule 4(m). "Although the Court certainly understands the reasons for plaintiff's counsel's error, [particularly in light of the process server's inability to complete service on January 27, 2020 when the summonses were addressed to TVA], the Court nonetheless finds that the plain language of Rule 4 demonstrates that plaintiff failed to properly serve process" on Defendant TVA within the ninety-day period provided by Rule 4(m). *Tanksley v. TVA*, No. 1:16-CV-487-TAV-SKL, 2017 WL 6391473, at *5 (E.D. Tenn. Dec. 14, 2017).

Therefore, the Court considers whether Plaintiff has demonstrated good cause for her failure to timely and properly effect service of process under Rules 4(i) and (m). If a plaintiff shows good cause for the failure to timely effect service of process, then Rule 4(m) mandates an extension of time for service. *Nafziger v. McDermott Int'l, Inc.,* 467 F.3d 514, 521 (6th Cir. 2006) ("Establishing good cause is the responsibility of the party opposing the motion to dismiss . . . and 'necessitates a demonstration of why service was not made within the time constraints.'") (quoting *Habib v. Gen. Motors Corp.,* 15 F.3d 72, 73 (6th Cir. 1994)). "To carry this burden, the plaintiff must offer an explanation equivalent to 'at least as much as would be required to show excusable neglect,' though 'simple inadvertence or mistake of counsel or ignorance of the rules

46

usually does not suffice.'" *Tanksley*, 2017 WL 6391473 at *5 (quoting *Moncrief v. Stone,* 961 F.2d 595, 597 (6th Cir. 1992) (additional internal quotation omitted)).

The parties fail to present an identical factual background of Plaintiff's attempts of service. Defendant TVA claims that the February 22, 2020 summons were defective because they were not directed to TVA, and cites *Phillips v. Tenn. Hotel Supply*, No. 1:04-CV-353, 2006 WL 897985 (E.D. Tenn. April 4, 2006)—a case which does not involve Rule 4(i). In its March 9, 2020 letter, however, Defendant TVA stated that Plaintiff "did not deliver copies of the summons and the complaint to the Attorney General of the United States until February 22, 2020–more than two weeks after her 90-day deadline for perfect timely service on TVA had run." [Doc. 18-2]. Plaintiff also only provides an Affidavit of Service [Doc. 28-1] for the U.S. Attorney General on February 14, 2020. Therefore, the Court is unable to state that Plaintiff has now complied with her service requirements under Rule 4(i).

Nevertheless, Plaintiff's sole justification for her delay/defective service of the U.S. Attorney General or the U.S. Attorney for the Eastern District of Tennessee is mistake of the law. "Actual notice and lack of prejudice to the defendant are likewise insufficient to establish good cause." *Slenzka v. Landstar Ranger, Inc.,* 204 F.R.D. 322, 324 (E.D. Mich. 2001). Accordingly, the undersigned finds that Plaintiff has failed to show good cause for her failure to timely serve TVA in compliance with Federal Rule of Civil Procedure 4(i).

The inquiry does not stop there, however, as the Court has authority to extend the time for service without a showing of good cause. *See Henderson v. United States*, 517 U.S. 654, 662 (1996); Advisory Committee's Notes on Fed. R. Civ. P. 4, 1993 Amendment, Subdivision (m) ("The new subdivision… authorizes the court to relieve a plaintiff of the consequences of an application of this subdivision even if there is no good cause shown . . . Relief may be justified,

for example, if the applicable statute of limitations would bar the refiled action, or if the defendant is evading service or conceals a defect in attempted service."). Courts in this District have turned to "a non-binding, five-factor test to determine whether an extension of time is warranted." *Tanksley*, 2017 WL 6391473 at *6 (finding no good cause for plaintiff's delay but granting a discretionary extension); *Treadway v. Cal. Prods. Corp.*, No. 2:13-cv-120, 2013 WL 6078637, *6 (E.D. Tenn. Nov. 19, 2013) (same). The factors are: (1) whether a significant extension is required; (2) whether an extension would actually prejudice the defendant; (3) whether the defendant had actual notice of the lawsuit; (4) whether dismissal of the complaint without prejudice would substantially prejudice the plaintiff (by, *e.g.*, rendering the suit time-barred); and (5) whether the plaintiff made a diligent, good faith effort to effect proper service of process. *Id.*

Ultimately, the Court finds that the balance of the relevant factors weighs in favor of an extension of the time for service. Although the extension requested here is lengthy, it is not egregious. Next, "the Court does not find that an extension 'would cause actual prejudice to the defendant[,] other than the inherent 'prejudice' in having to defend the lawsuit.'" *Id.* at *8 (quoting *Treadway*, 2013 WL 6078637, at *5). Defendant TVA had actual notice of the lawsuit, as reflected in its January 8, 2020 letter. *See* [Doc. 18-1]; *see, e.g.*, *Tanksley*, 2017 WL 6391473 at *8 (finding the fact that TVA participated in EEOC proceedings, well as received actual service of the summons and complaint, "means that TVA has been aware of this action since its inception"). The Court finds that the potential prejudice to Plaintiff does not weigh in favor of an extension, as the Court has previously detailed how many of Plaintiff's claims are already time-barred.

Lastly, the Court finds that Plaintiff made a good faith effort to service process within the ninety-day period under Rule 4(m). Plaintiff attempted to serve TVA through both the U.S. Attorney General and U.S. Attorney for the Eastern District of Tennessee, although her

48

summonses were allegedly refused because they were addressed to TVA. However, Defendant TVA subsequently claims that the February 22, 2020 summonses were defective because they were addressed to the U.S. Attorney General and U.S. Attorney for the Eastern District of Tennessee, despite listing TVA as a Defendant.

Accordingly, although Plaintiff failed to timely effect service of process in compliance with Rule 4, as well as failed to demonstrate good cause to warrant a mandatory extension of the time for service, the Court finds it appropriate to permit late service of process. "Such a holding is in keeping with the 'overall policy in [the Sixth] Circuit of resolving disputes on their merits,' rather than on the minutia of procedural rules." *Id.* at *9 (quoting *Vergis v. Grand Victoria Casino & Resort*, 199 F.R.D. 216, 218 (S.D. Ohio 2000)). Therefore, the undersigned recommends that the Court allow Plaintiff an additional fourteen days to demonstrate that she has properly effected service on Defendant TVA in compliance with Rule 4(i).

## IV.    CONCLUSION

Accordingly, for the reasons explained above, the Court **RECOMMENDS**[4] that Defendants' Motions to Dismiss [Docs. 17 & 22] be **GRANTED IN PART**. The undersigned **RECOMMENDS** that Plaintiff's claims against Defendants TVA and Jacobs be dismissed, with

---

[4] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Civ. P. 72(b)(2). The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Such objections must conform to the requirements of Federal Rule of Civil Procedure 72(b). Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 153-54 (1985). "[T]he district court need not provide *de novo* review where objections [to the Report and Recommendation] are '[f]rivolous, conclusive or general.'" *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986) (quoting *Nettles v. Wainwright*, 677 F.2d 404, 410 n.8 (5th Cir.1982)). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).

49

the exception of Plaintiff's nuisance claim, as well as that Plaintiff be granted an additional

fourteen days to properly serve Defendant TVA.

Respectfully submitted,

_Bruce Guyton_
United States Magistrate Judge